**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------- X

Dr. JEAN LOUIS,

                           Plaintiff,

      - against -

THE CITY OF NEW YORK, a municipal entity,
New York City Sanitation Enforcement Agent ILVA
HARRIGAN, New York City Police Officers
THOMAS LIAMPACHARA and ANUEDI
RODRIGUEZ, and New York City Police Sergeant
CARMINE SEMIOLI,

                          Defendants.
-------------------------------------------------------------------- X

No. 15-cv-05229 (SAS)

**<u>AMENDED COMPLAINT</u>**

**JURY TRIAL**

Plaintiff Dr. JEAN LOUIS, by his attorneys, Beldock Levine & Hoffman LLP, as and for his amended complaint, alleges as follows:

**<u>PRELIMINARY STATEMENT</u>**

1.      This civil rights action seeks redress under 42 U.S.C. § 1983 and New York State law for injuries Plaintiff sustained when New York City Sanitation Enforcement Agent ILVA HARRIGAN made false allegations against Plaintiff, and New York City Police Officers THOMAS LIAMPACHARA and ANUEDI RODRIGUEZ and New York City Police Sergeant CARMINE SEMIOLI falsely arrested Plaintiff.

2.      Plaintiff seeks (i) compensatory damages for, *inter alia*, false imprisonment, psychological and emotional distress, injuries to reputation and business, and financial loss caused by the illegal actions of the defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; and (iii) such other and further relief, including costs and attorneys fees, as this Court deems equitable and just.

## JURISDICTION

3.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), as this action seeks redress for the violation of Plaintiff's constitutional and civil rights.

4.      Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. § 1367(a) over any and all state law claims that are so related to the federal claims that they form part of the same case or controversy.

## VENUE

5.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to Plaintiff's claims took place.

## JURY DEMAND

6.      Plaintiff demands a trial by jury in this action on each and every one of their claims for which jury trial is legally available.

## THE PARTIES

7.      Plaintiff Dr. JEAN LOUIS is a citizen of the United States and is and was at all times relevant to this Complaint a resident of New York County, City and State of New York.

8.      Defendant THE CITY OF NEW YORK ("the City") is a municipal entity created and authorized under the laws of the State of New York.

9.      The City is authorized by law to maintain a police department, and does maintain the New York City Police Department ("NYPD") which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

10.    The City is authorized by law to maintain a Department of Sanitation, and does maintain the New York City Department of Sanitation ("DSNY").  The DSNY maintains an Enforcement Division and employs Sanitation Enforcement Agents to monitor compliance with rules and regulations regarding the proper storage and disposal of recycling and garbage by New York City residents and businesses.  The City assumes the risks incidental to the maintenance of DSNY and the employment of Sanitation Enforcement Agents.

11.    Defendant  ILVA HARRIGAN is a New York City Sanitation Enforcement Agent who made false allegations that led to Plaintiff's wrongful arrest.

12.    Defendants THOMAS LIAMPACHARA and ANUEDI RODRIGUEZ are NYPD Police Officers, and Defendant CARMINE SEMIOLI is an NYPD Police Sergeant.  These individual defendants unlawfully detained and arrested Plaintiff without suspicion of any illegal activity.

13.    At all times relevant herein, defendants HARRIGAN, LIAMPACHARA, RODRIGUEZ, and SEMIOLI have acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or officers of the City, the DSNY and/or the NYPD, and incidental to the lawful pursuit of their duties as agents, employees, and/or officers of the City, the DSNY, and/or the NYPD.

14.    At the times relevant herein, defendants HARRIGAN, LIAMPACHARA, RODRIGUEZ, and SEMIOLI violated clearly established rights and standards under the Fourth and Fourteenth Amendments to the United States Constitution, of which reasonable police officers in their respective circumstances would have known.

## STATEMENT OF FACTS

15.     Dr. Jean Louis is an optometrist.  He has been licensed to practice optometry in New York since 2002.

16.     Dr. Louis owns and operates the Cohen's Fashion Optical located at 2565 Broadway in Manhattan.  He has owned this business since 2009 and worked there for approximately two years before that.

17.     Dr. Louis regularly works six days a week.  Dr. Louis has many responsibilities in running the business, which include interacting with customers, overseeing his employees, and examining patients in private examination rooms within the store.

18.     On July 9, 2014, Dr. Louis was at work in his store.

19.     One of Dr. Louis' employees told him that a sanitation officer had come into his store and stated that she found a trash bag in front of the adjacent business, a T-Mobile store, which she believed belonged to Dr. Louis' business.

20.     Dr. Louis went outside to speak with the sanitation officer, who, upon information and belief, was defendant New York City Sanitation Enforcement Agent ILVA HARRIGAN.

21.     HARRIGAN told Dr. Louis that she had looked into the trash bag and claimed that some of its contents came from Cohen's Fashion Optical.  HARRIGAN then complained that the bag should not have been left on the street during the day.

22.     The trash bag in question was a nondescript, black garbage bag – one of many that was stacked in front of the adjacent T-Mobile store.

23.     Dr. Louis explained to HARRIGAN that the bag was not in front of his store and that he had put out his business' garbage bags for collection the night before, as usual.

24.     Hoping to end the matter, Dr. Louis went back inside his business.

25.     A short time later, HARRIGAN posted a Notice of Violation and Hearing on the door of Dr. Louis' store.

26.     The Notice of Violation and Hearing falsely alleged that HARRIGAN had personally observed a trash bag situated on the public sidewalk in front of Dr. Louis' store more than one hour before the store's closing time.

27.     HARRIGAN affirmed these false allegations under penalty of perjury.

28.     Dr. Louis retrieved the ticket and, after reading it, went outside to ask HARRIGAN to amend it to accurately reflect that she had observed the trash bag in front of the T-Mobile store, not Dr. Louis' store.

29.     HARRIGAN, who was seated in her car at the time, refused to speak with Dr. Louis, so he called 911 to report what had occurred.

30.     Dr. Louis never touched defendant HARRIGAN's car.

31.     Shortly thereafter, defendants NYPD Officers LIAMPACHARA and RODRIGUEZ responded.

32.     Dr. Louis informed the officers that HARRIGAN had issued his store a false ticket. The officers told Dr. Louis that there was nothing they could do for him.

33.     The officers spoke with defendant HARRIGAN.

34.     Dr. Louis went back inside his store and attended to a patient.

35.     Sometime later, one of Dr. Louis' employees told him that the officers wanted him to come back outside.

36.     Dr. Louis went back outside where he encountered defendant NYPD Sergeant SEMIOLI.  Defendant SEMIOLI was a supervising officer.

37.     Defendant SEMIOLI asked Dr. Louis why he had stood by defendant HARRIGAN's car.

38.     Dr. Louis attempted to explain what had transpired, with HARRIGAN having issued a false ticket, but defendant SEMIOLI told Dr. Louis that he did not want to hear about the ticket.

39.     SEMIOLI then went to speak with HARRIGAN and another sanitation agent who had arrived.

40.     SEMIOLI asked defendant HARRIGAN whether Dr. Louis had threatened her or touched her and HARRIGAN replied "no" to both questions.

41.     Dr. Louis heard SEMIOLI say "I cannot arrest him."

42.     After speaking further with defendant HARRIGAN and the other sanitation officer, defendant SEMIOLI instructed Officers LIAMPACHARA and RODRIGUEZ to place Dr. Louis under arrest.

43.     Officers LIAMPACHARA and RODRIGUEZ placed Dr. Louis in handcuffs and put him in a police car.

44.     All of these events took place in front of Dr. Louis' store, in full view of his employees, customers, patients, and other business owners.

45.      The officers took Dr. Louis to a police precinct where he was photographed, fingerprinted, and searched.  Money that was in Dr. Louis' possession was vouchered.  It took many months, numerous phone calls, and a trip to One Police Plaza, for him to recover his money after this incident.

46.     Dr. Louis was transported to Central Booking.

47.     In the early hours of July 10, 2014, Dr. Louis was abruptly released from custody.

6

48.     An officer told him, in sum and substance, "the ADA doesn't want you to see the judge."  Dr. Louis asked if he would receive any paperwork explaining the circumstances and reason for his arrest and was told, in sum and substance, "no, it's like nothing happened."

49.     On September 15, 2014, Dr. Louis and his attorney appeared for a hearing before the New York City Environmental Control Board regarding the Notice of Violation that defendant HARRIGAN had issued.

50.     On September 16, 2014, Administrative Law Judge Evonne Tolbert issued a Decision and Order dismissing the Notice of Violation finding that Dr. Louis' store had not, as HARRIGAN falsely alleged, violated New York City Administrative Code § 16-120(C) by placing a trash bag on the sidewalk during business hours.

51.     Defendants' conduct caused Dr. Louis to suffer loss of liberty, loss of income, emotional and psychological pain, embarrassment, humiliation, and harm to his reputation, and to incur costs and attorney's fees.

## COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW

52.     Plaintiff served a Notice of Claim upon the City of New York by personal delivery on July 25, 2014, within ninety days of the events giving rise to their claims.

53.     On January 21, 2015, Plaintiff attended an examination pursuant to New York General Municipal Law § 50-h.

54.     More than thirty days have elapsed since Plaintiff served his Notice of Claim and the City has not offered adjustment or payment of his claim.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 – Violations of Fourth and Fourteenth Amendment Rights

55.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

7

56.     In committing the acts and omissions complained of herein, defendants HARRIGAN, LIAMPACHARA, RODRIGUEZ, and SEMIOLI acted under color of state law to deprive plaintiff of certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution, including, but not limited to:

   a.     the right to be free from unreasonable search and seizure;

   b.     the right to be free from arrest without probable cause;

   c.     the right to be free from false imprisonment, that being wrongful detention without good faith, reasonable suspicion, or legal justification, and of which detention plaintiffs were aware and to which they did not consent; and

   d.     the right to be free from deprivation of liberty without due process of law.

57.     As a direct and proximate result of being deprived of these constitutional rights, plaintiff suffered the injuries and damages set forth above.

58.     The unlawful conduct of defendants HARRIGAN, LIAMPACHARA, RODRIGUEZ, and SEMIOLI was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 – Violations of First Amendment Rights

59.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

60.     Plaintiff has a constitutional right, protected by the First Amendment, to voice public disapproval of police and government activity without fear of arrest.

61.     The duties of NYPD police officers include the duty to protect the constitutional rights of persons who wish to express their opinions publicly in a lawful manner.

62.     During the incident alleged herein, plaintiff lawfully expressed disapproval of defendant HARRIGAN's improper conduct in issuing his business a false Notice of Violation.

8

63.     In response to plaintiff's statements, defendant HARRIGAN made false accusations that were intended to and caused plaintiff to be arrested.

64.     Defendants LIAMPACHARA, RODRIGUEZ, and SEMIOLI knew that plaintiff had not committed any criminal conduct and was guilty only of criticizing defendant HARRIGAN for issuing his business a false Notice of Violation.

65.     Defendants LIAMPACHARA, RODRIGUEZ, and SEMIOLI arrested plaintiff as a result of his critical statements of defendant HARRIGAN.

66.     By virtue of the foregoing, defendants HARRIGAN, LIAMPACHARA, RODRIGUEZ, and SEMIOLI intentionally deprived plaintiff of his rights secured by the First Amendment of the United States Constitution and as such, are liable to plaintiff under 42 U.S.C. § 1983.

67.     As a direct and proximate result of being deprived of these constitutional rights, plaintiff suffered the injuries and damages set forth above.

68.     The unlawful conduct of defendants HARRIGAN, LIAMPACHARA, RODRIGUEZ, and SEMIOLI was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

### THIRD CAUSE OF ACTION
**Violations of New York State Constitution**

69.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

70.     Defendants subjected Plaintiff to the foregoing acts and omissions without due process of law, thereby depriving him of the rights, privileges, and immunities guaranteed by Article 1, § 6 and Article 1, § 12 of the New York State Constitution, including, without limitation, the right to due process and the right to be free from unreasonable searches and seizures.

71.     As a direct and proximate result of defendants' deprivations of plaintiff's rights, privileges, and immunities guaranteed by the New York State Constitution, plaintiff suffered the injuries and damages set forth above.

### THIRD CAUSE OF ACTION
**False Imprisonment**

72.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

73.     Defendants HARRIGAN, LIAMPACHARA, RODRIGUEZ, and SEMIOLI through the foregoing acts, caused Plaintiff to be wrongfully detained without good faith, reasonable suspicion, or legal justification, and of which detention Plaintiff was aware and to which he did not consent.

74.     Defendants HARRIGAN, LIAMPACHARA, RODRIGUEZ, and SEMIOLI committed the foregoing acts intentionally, willfully, and with malicious disregard for Plaintiff's rights and are therefore liable for punitive damages.

### FOURTH CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**

75.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

76.     Defendants HARRIGAN, LIAMPACHARA, RODRIGUEZ, and SEMIOLI through the foregoing acts, did commit extreme and outrageous conduct and thereby intentionally and/or recklessly caused Plaintiff to experience severe mental and emotional distress, pain, suffering, and damage to name and reputation.

77.     Defendants HARRIGAN, LIAMPACHARA, JOHN DOE 1, and JOHN DOE 2 committed the foregoing acts intentionally, willfully, and with malicious disregard for Plaintiff's rights and are therefore liable for punitive damages.

## FIFTH CAUSE OF ACTION
### *Respondeat Superior*

78.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

79.     At all relevant times, defendants HARRIGAN, LIAMPACHARA, RODRIGUEZ, and SEMIOLI were employees of the City and were acting within the scope of their employment.

80.     The City is therefore vicariously liable under the doctrine of r*espondeat superior* for the actions of defendants HARRIGAN, LIAMPACHARA, RODRIGUEZ, and SEMIOLI set forth herein.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff demands the following relief against the defendants, jointly and severally:

(a)     compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b)     punitive damages from defendants HARRIGAN, LIAMPACHARA, RODRIGUEZ, and SEMIOLI to the extent allowable by law;

(c)     attorneys fees;

(d)     the costs and disbursements of this action;

(e)     interest; and

(f)     such other and further relief as this Court deems just and proper.

Dated: New York, New York
       October 1, 2015

Joshua S. Moskovitz (JM3635)
BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400

*Attorneys for Plaintiff Dr. Jean Louis*