USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 2/10/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DR. JEAN LOUIS,

                Plaintiff,

- against -

THE CITY OF NEW YORK, a municipal entity, New York City Sanitation Enforcement Agent ILVA HARRIGAN, New York City Police Officers THOMAS LIAMPACHARA and ANUEDI RODRIGUEZ, and New York City Police Sergeant CARMINE SEMIOLI,

                Defendants.

**OPINION AND ORDER**

15 Civ. 5229 (ER)

Ramos, D.J.:

    Plaintiff seeks redress under 42 U.S.C. § 1983 and New York State law for damages incurred when he was falsely arrested. Defendants City of New York, Sanitation Enforcement Agent Ilva Harrigan,[1] Police Officers Thomas Liampachara and Anuedi Rodriguez, and Sergeant Carmine Semioli bring this motion for summary judgment seeking dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, the Court GRANTS judgment for Defendants on the federal claims and the state law claim for false arrest, and declines to retain supplemental jurisdiction over the remainder of the state law claims.

**I. Background**

    The following facts are undisputed except where otherwise noted.

---

[1] Defendant Harrigan was subsequently promoted to the rank of Sanitation Enforcement Sergeant. She is referred to herein by her rank on the date of the events in question.

This case arises from a dispute between Dr. Jean Louis ("Plaintiff") and a New York City Department of Sanitation ("DSNY") worker who issued him a citation for improper garbage disposal, which resulted in Plaintiff's being arrested for obstructing governmental administration ("OGA").  Plaintiff is an optometrist who owns and operates a Cohen's Fashion Optical franchise at 2565 Broadway in Manhattan.  *See* Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Defs.' 56.1 Stmt.") (Doc. 56) ¶ 1.  On July 9, 2014, Defendant Ilva Harrigan was on patrol in a marked DSNY vehicle.  *Id.* ¶¶ 2, 9.  At approximately noon, Harrigan observed a black garbage bag on the sidewalk adjacent to Plaintiff's store.  *Id.* ¶ 10.  Harrigan looked inside the bag, entered the Plaintiff's store, and spoke with Plaintiff and one of Plaintiff's employees.  *Id.* ¶¶ 12, 13.

Following the conversations with Plaintiff and his employee, Harrigan wrote a Notice of Violation and Hearing to Cohen's Fashion Optical and posted it on the outside of the door to the store.  *Id.* ¶¶ 14-15.  Plaintiff retrieved the Notice of Violation from the door and walked to Harrigan's car, where he disputed the accuracy of the ticket through the open passenger side window.  *Id.* ¶¶ 16, 18-19.

At approximately 12:28 p.m., Plaintiff called 911 and told the operator that a Sanitation Department worker had written him a ticket for garbage that was not in front of his store and that he wanted the Police to create a police report.  *Id.* ¶¶ 21-22.  During the call, Plaintiff was "walking back and forth" in front of his store and at some point was "on the street by the car." *Id.* ¶¶ 23-25.   The parties dispute whether Plaintiff was actually blocking the vehicle.  *See*

Defendants' Reply to Plaintiff's Local Rule 56.1 Counter-Statement ("Defs.' Reply to Counter-56.1") (Doc. 80) ¶¶ 65-68.[2]

DSNY Segeant Dameka Dowdy subsequently arrived at the location of Plaintiff's store. Defs.' 56.1 Stmt. ¶¶ 28, 34.[3] Then New York Police Department ("NYPD") Officers Thomas Liampachara and Anuedi Rodriguez received a radio run and proceeded to Plaintiff's store. *Id.* ¶¶ 31-33.[4] When the two police officers arrived at the scene, they spoke to Plaintiff, Dowdy, and Harrigan. *Id.* ¶ 34.

Harrigan told the officers that Plaintiff blocked her car by standing in front of it, thereby preventing her from leaving. *Id.* ¶ 35. Harrigan later testified that at no point did she actually attempt to move her vehicle to leave. Plaintiff's Local Civil Rule 56.1 Counter-Statement ("Pl.'s Counter-56.1") (Doc. 68) ¶ 83. After speaking with Harrigan, the officers then requested their supervisor, Sergeant Carmine Semioli, to come to the scene. Defs.' 56.1 Stmt. ¶ 38. When he arrived, Sergeant Semioli spoke with Harrigan, who again stated that Plaintiff stood directly in front of her car, preventing her from leaving to continue her official duties. *Id.* ¶ 41. Sergeant Semioli then spoke with Plaintiff, who conceded to Semioli that "at some point [he] was in the street." Pl.'s Counter-56.1 ¶¶ 42-43.

---

[2] The parties also dispute whether Agent Harrigan would have hit Plaintiff if she had driven forward and how far Plaintiff was away from the vehicle. *Id.* ¶¶ 68-69.

[3] While Defendants also aver that that Agent Harrigan radioed DSNY headquarters and reported that Plaintiff was "standing in front of her car" and that the call was routed to DSNY Sergeant Dameka Dowdy, Plaintiff objects to the Court's consideration of these statements on the basis of inadmissible hearsay and lack of authenticity. *See* Pl.'s Counter-56.1 ¶ 27; Defs.' Reply to Counter-56.1 ¶¶ 26, 29. For purposes of this motion, the disputed evidence is not central to or dispositive of the arguments presented.

[4] Plaintiff suggests in his Rule 56.1 Statement that the Court should sanction Defendant for alleged spoliation of evidence, including the recordings of the 911 calls and radio runs. Pl.'s Counter-56.1 ¶ 26.

3

At the scene, Officer Rodriguez and Sergeant Dowdy watched a security video of the incident taken from a nearby condominium complex located at 275 W. 96th Street. *Id.* ¶¶ 74-75; Defs.' Reply to Counter-56.1 ¶ 75.[5]  Officer Rodriguez testified that the video showed that Agent Harrigan moved her car forward, and that Plaintiff was standing in front of the car preventing Agent Harrigan from moving further.  Pl.'s Counter-56.1 ¶ 76.  Sergeant Dowdy similarly testified that the video showed Plaintiff standing in front of the vehicle so it could not move, but that Agent Harrigan did not move her vehicle forward.  *Id.* ¶ 84; *see also* Doc. 82, Ex. R, ("Dowdy Dep.") at 33:7-11.  Officer Rodriguez told Officer Liampachara and Sergeant Semioli what he saw on that video and Sergeant Semioli ordered the officers to arrest Plaintiff, *Id.* ¶¶ 77-79.  The Police handcuffed the Plaintiff and transported him to the 24th Precinct for arrest processing. *Id.* ¶ 47.  Plaintiff was subsequently released and the District Attorney's Office declined to prosecute the case. Pl.'s Counter-56.1 ¶ 48.  On September 16, 2014, the Environmental Control Board issued an order dismissing the Notice of Violation issued to Plaintiff. *Id.* ¶ 49.

## II. Procedural History

Plaintiff commenced this action against Defendants on July 6, 2015 asserting a claim of false arrest and unreasonable seizure in violation of 42 U.S.C. § 1983.  *See* Complaint ("Compl.") (Doc. 1); *see also* Amended Complaint ("Am. Compl.") (Doc. 19).  Plaintiff also asserts claims under state law against for false imprisonment and intentional infliction of

---

[5] The Officers did not obtain a copy or otherwise preserve the video, so the parties no longer have a copy.  *Id.* ¶ 80. The only evidence presented concerning the video is the sworn testimony of Rodriguez and Dowdy.  Additionally, Plaintiff's store also had a security camera that captured at least some portion of the events in question.  *Id.* ¶ 72.  It is not alleged that the Officers reviewed this security footage prior to the arrest, but this security footage is currently available.  The quality of the Plaintiff's video makes it difficult to discern the events in question, and Defendants note that Plaintiff cannot be seen on the video for its entire duration.

4

emotional distress, and asserts that the City of New York is liable under the doctrine of *respondeat superior*.  Am. Compl. ¶¶ 69-80.  Following an unsuccessful attempt to mediate, Defendants moved for summary judgment.  *See* Doc. 64.

### III.  Legal Standard

Summary judgment is only appropriate where the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, [and] other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005).  "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."  *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex Corp.*, 477 U.S. at 322-23); *see also* Fed. R. Civ. P. 56(c)(1)(B).  The burden then shifts to the non-moving party to come forward with admissible evidence sufficient to support each essential element of the claim, and "designate specific facts showing that there is a genuine

issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted); *see also Cordiano*, 575 F.3d at 204.

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.,* 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  A motion for summary judgment cannot be defeated on the basis of conclusory assertions, mere denials, or unsupported alternative explanations of facts.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008); *see also Senno*, 812 F. Supp. 2d at 467 (citing *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998)).  "The nonmoving party cannot defeat summary judgment by 'simply showing that there is some metaphysical doubt as to the material facts,'" *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)), it "must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson*, 477 U.S. at 256-57).

"Summary judgment is properly granted when the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Abramson v. Pataki,* 278 F.3d 93, 101 (2d Cir. 2002) (quoting *Celotex Corp.,* 477 U.S. at 322).  In that situation, there can be no genuine dispute as to any material fact, "since a complete failure of proof concerning an essential

element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

## IV.  Section 1983

Section 1983 grants a right of action to any "citizen of the United States or other person within the jurisdiction thereof" who has been deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of state law.  42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must allege that:  (1) a right secured by the Constitution or federal law was violated by defendants, and (2) the alleged violation was committed by a person acting under color of state law.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  Plaintiff alleges that he was subject to unreasonable seizure and was falsely arrested in violation of his First, Fourth, and Fourteenth Amendment rights.

### A. False Arrest Claims Against the Officer Defendants

Defendants move for summary judgment on Plaintiff's false arrest allegations against Liampachara, Rodriguez, and Semioli (the "Officer Defendants" or "Officers").  Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defs.' Mem.") (Doc. 58) at 7-13.  In analyzing false arrest claims under Section 198, courts in the Second Circuit have generally looked to the law of the state in which the arrest occurred.  *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006) (citing *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004)).  Here, Plaintiff asserts parallel false arrest claims under both § 1983 and state law.  To establish a claim for false arrest under both § 1983 and New York law, a plaintiff must prove:  (1) that the defendants intentionally confined plaintiff; (2) that plaintiff was conscious of the confinement and did not consent to it, and (3) that the confinement was not otherwise privileged.  *See Jocks v.*

7

*Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (quoting *Broughton v. State*, 37 N.Y.2d 451, 373 N.Y.S.2d 87, 335 N.E.2d 310, 314 (N.Y. 1975)).

Here, there is no dispute that the Officer Defendants intentionally arrested Plaintiff, that Plaintiff was aware of his arrest, and that he did not consent to it. Thus, the only disputed element is whether the arrest was otherwise privileged. If the Officer Defendants had probable cause to arrest Plaintiff or are protected under the doctrine of qualified immunity, then the confinement is privileged and constitutes a complete defense to a false arrest claim. *Covington v. City of N.Y.*, 171 F.3d 117, 122 (2d Cir. 1999) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d. Cir. 1996)); *see also Simpson v. City of New York*, 793 F.3d 259 (2d Cir. 2015) (to avoid liability for a claim of false arrest, an arresting officer may demonstrate that either he had probable cause for the arrest or he is protected by qualified immunity). The Officer Defendants argue the false arrest claim must fail because they had probable cause for the arrest, and, even if they did not have probable cause, because they are protected by the doctrine qualified immunity.

**1. Probable Cause**

The existence of probable cause may be determined as a matter of law on summary judgment where there is no material dispute as to the relevant events and knowledge of the officers. *See Weyant*, 101 F.3d at 852. "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.*[6] When determining whether probable cause exists, courts are to

---

[6] The validity of an arrest does not depend upon a finding that the arrested person is guilty. *Cf. Lee v. Sandberg*, 136 F.3d 94, 102-103 (2d Cir. 1997) (explaining that the circumstances giving rise to probable cause exist independently of the ultimate validity of the allegations within a given complaint); *see also Mesa v. City of N.Y.*, No. 09 Civ. 10464 (JPO), 2013 WL 31002, at *10 (S.D.N.Y. Jan. 3, 2013) ("[F]alse arrest and imprisonment turn on the validity of the *initial* detainment, rather than on the *ultimate disposition* of the charges, as probable cause forms the heart of the inquiry, rather than the eventual result at trial.") (emphasis in original). Therefore, the Court does not consider the

"consider those facts *available to the officer* at the time of the arrest and immediately before it" and must render a decision based upon "the totality of the circumstances." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (citation omitted) (emphasis in original); *see also Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.")

Plaintiff was arrested for and charged with obstructing governmental administration. Under New York law, OGA has four elements: "(1) prevention or attempt to prevent (2) a public servant[7] from performing (3) an official function (4) by means of intimidation, force or interference." *Cameron v. City of New York*, 598 F.3d 50, 68 (2d Cir. 2010) (internal quotations and citation omitted); *see also People v. Stumpp*, 129 Misc.2d 703, 493 N.Y.S.2d 679, 680 (1985).

The Officer Defendants argue they were justified in arresting Plaintiff because they developed reasonably trustworthy information that Plaintiff had committed the offense of OGA. Defs.' Mem. at 8. Specifically, Defendants assert that Harrigan's statement to them that Plaintiff had stood in front of her vehicle, thereby preventing her from leaving, "is "in and of itself…enough to establish probable cause." *Id.* at 10. Plaintiff argues that there exists a genuine dispute as to a material fact in that the surveillance video reviewed at the scene provided exculpatory evidence which gave the Officers reason to doubt the veracity of Harrigan's account. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Mem.") (Doc. 69) at 10-12. That is, Plaintiff argues he did not prevent Agent Harrigan

---

District Attorney's decision not to prosecute or the Environmental Control Board's dismissal of the Notice of Violation in its probable cause analysis.

[7] It is not disputed Harrigan was a public servant.

from moving her car or performing her official duties, and therefore the Officer Defendants lacked probable cause. *Id.* at 7.

Viewing the facts in the light most favorable to Plaintiff, the Court finds that probable cause existed to arrest Plaintiff. As Plaintiff admits: "[i]t is undisputed that Agent Harrigan told Officers Liampachara and Rodriguez that Dr. Louis . . . prevented her from leaving by standing in front of her car." Pl.'s Counter-56.1 ¶ 35. Plaintiff also concedes that "[p]robable cause will generally be found to exist when an officer is advised of a crime by a victim or an eyewitness." Pl.'s Mem. at 10 (citation omitted). Plaintiff's only argument regarding the lack of probable cause therefore rests with the interpretation of the surveillance video that was viewed by Officer Rodriguez and Sanitation Sergeant Dowdy prior to Plaintiff's arrest. While this video is no longer available,[8] Plaintiff has failed to point to any testimony that contradicts Defendants' account that he was standing in front of the car preventing Harrigan from moving her vehicle. On the contrary, Rodriguez and Dowdy both testified that the video showed Plaintiff standing in front of Harrigan's car:

> Q. Explain to me what you saw in the video. You described two scenes.
>
> A. One part of the video shows him [Plaintiff] standing on the driver's side of the vehicle so that the vehicle can't drive forward….
>
> Doc. 82, Ex. R, ("Dowdy Dep.") at 33:7-11.
>
> * * *
>
> Q. When you said the first part of the video that you described where he's standing so that the vehicle can't move, where was he standing in relation to the vehicle?

---

[8] Plaintiff argues that the Officer Defendants lacked probable cause because they "knew from the surveillance video that Agent Harrigan was not telling the truth . . ." Pl. Mem. at 10. Defendants concede that the unpreserved video could affect the probable cause analysis if "the video contradicted the statements Harrigan made to the Police." Defs.' Mem. at 12.

> A. He was standing in front of the vehicle.
>
> Q. Directly in front of it?
>
> A. Directly in front, like more onto driver's side but in front of the vehicle.
>
> Q. How far away was he standing from the vehicle?
>
> A. I can't really say, not even a foot.

Dowdy Dep. at 33:23-34:7.

\* \* \*

> Q. What did the video show?
>
> A. It showed Dr. Jean in front of that sanitation officer's vehicle, preventing her from exiting her parking spot.

Doc. 82, Ex. Q, ("Rodr. Dep.") at 29:25–30:04.[9]

Plaintiff's mere denial that he blocked the car, without more, does not create a genuine issue of material fact regarding whether probable cause existed at the time of the arrest. *See Celotex.,* 477 U.S. at 322–23, 106 S.Ct. 2548 (plaintiff's "version of the facts" must be supported by specific facts sufficient to establish that there is a genuine factual issue for trial); *Williams v. City of New York*, 916 F. Supp. 2d 235, 243 (E.D.N.Y. 2012) ("All that plaintiff does is assume the officers lied because he states that he did not [commit the offense]. This bare assumption is insufficient to withstand a motion for summary judgment."). The video footage, as described in the sworn testimony of the Officers, comports with the statements Harrigan made to the Officers—

---

[9] The only difference between Rodriguez and Dowdy's testimony that Plaintiff could point to is that Dowdy testified that at no point did Agent Harrigan actually move her vehicle forward, and Rodriguez testified that Harrigan did attempt to pull out of the parking space. *Compare* Rodr. Dep. at 36:3-14 ("She moved the car, the front, and the complainant was not moving from his location, preventing her from existing the parking spot where she had parked.") *with* Dowdy Dep. at 45:25-46:3 ("Q. So there's no point where she actually tried to move her vehicle forward? A. No."). Whether Harrigan actually moved her car forward, however, does not affect the Court's probable cause analysis because Dowdy's testimony confirms that Plaintiff was blocking the vehicle.

namely that Plaintiff blocked her car by standing in front of it.[10]  Based on the foregoing, the Court readily finds that the Officers developed more than sufficient probable cause to believe that Plaintiff committed the offense of obstruction of governmental administration.[11]

### 2. Qualified Immunity

Moreover, even if probable cause were not established, the Court finds the Defendants are entitled to qualified immunity.  The doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights . . . or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." *Bradway v. Gonzales*, 26 F.3d 313, 317–18 (2d Cir. 1994) (internal quotation marks and citations omitted).  "[A]n arresting officer is entitled to qualified immunity on a claim of false arrest if either:  (a) it was objectively

---

[10] Plaintiff also disputes that the Officers believed there was probable cause to arrest Plaintiff for OGA because after speaking with Plaintiff and Agent Harrigan initially, Officers Rodriguez and Liampachara told Dr. Louis there was nothing they could do.  Pl.'s Counter-56.1 ¶ 36.  Additionally, Officer Liampachara testified that at that point, he did not feel comfortable making the decision to arrest Dr. Louis. *Id.*  It is immaterial whether an Officer felt comfortable at a given point in time to arrest an individual, because the probable cause analysis requires consideration of the totality of the circumstances available to an officer at the time of the arrest.  As the situation developed, video surveillance confirmed Harrigan's account, and Sergeant Semioli subsequently ordered the officers to arrest Plaintiff.  Plaintiff also notes that Officer Rodriguez wrote in his memo book "91" at "1242," which he later crossed out, and that "10-91" is the NYPD code for "non-crime occurred." *Id.*  The fact that an Officer may have originally written an incident was not a crime does not preclude the Court's finding of probable cause as a matter of law.

[11] For the same reasons, the false arrest claim against Harrigan must also fail.  Plaintiff asserts that a person who provides false information to the police cannot invoke the probable cause defense which might be available to the police acting upon the information given.  Pl.'s Mem. at 18-19 (citing *Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10*, 605 F.2d 1228, 1248 (2d Cir. 1979)).  While Plaintiff maintains that Agent Harrigan "knowingly [gave] false information to the police" and therefore cannot invoke the probable cause defense, here it's clear that the Officer defendants did not rely solely on Harrigan's statement, but rather confirmed her statement by reference to the video surveillance before deciding to arrest Plaintiff.  In any event, Harrigan's involvement in the incident falls well short of the personal involvement required under Second Circuit law to hold a non-officer liable for false arrest. *See Du Chateau v. Metro-N. Commuter R. Co.*, 253 A.D.2d 128, 131, 688 N.Y.S.2d 12 (1st Div. 1999) (if a defendant "directed an officer to take [the plaintiff] into custody," he is liable for false imprisonment; but if he "merely made his statement, leaving it to the officer to act or not as he thought proper," liability will not be imposed.").

reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Carthew v. Cnty. of Suffolk*, 709 F. Supp. 2d 188, 203 (E.D.N.Y. 2010) (Bianco, J.) (citing *Walczyk v. Rio*, 496 F.3d 139, 163 (2d Cir. 2007); *see also Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir. 1999)). The Second Circuit has defined the latter standard, commonly referred to as "arguable probable cause," as follows:

> Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law. It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.

*Cerrone v. Brown*, 246 F.3d 194, 202-03 (2d Cir. 2001) (quotation marks and internal citations omitted) (emphasis in original). Only where an officer's "judgment was so flawed that no reasonable officer would have made a similar choice," is the denial of qualified immunity appropriate. *Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (citing *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir. 1995).

The inquiry of whether the shield of qualified immunity applies is a mixed question of law and fact. *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004). Where there is no material factual dispute, it is appropriate for the district court to assess the reasonableness of the defendants' conduct under the circumstances presented and to rule on qualified immunity at the summary judgment stage. *Lennon*, 66 F.3d at 421.

In light of the evidence described above, the doctrine of qualified immunity applies here. The officers had information they reasonably believed to be reliable, including video evidence that Plaintiff was blocking Harrigan's car. Based on the foregoing, a reasonable officer could

have concluded that probable cause existed to arrest Plaintiff for OGA.  Finally, the Court notes that, even if there were a doubt as to the existence of probable cause, there was at a minimum arguable probable cause giving rise to qualified immunity.

Accordingly, Defendants' motion for summary judgment on the Section 1983 false arrest claim against the Officer Defendants and Agent Harrigan is GRANTED.

### B. First Amendment Claim

Defendants argue Plaintiff cannot maintain his First Amendment claim under Section 1983 because in sworn testimony he disclaims that the incident had any effect on the exercise of his right to free speech, Defs.' Mem. at 19-20, and indeed, Plaintiff has abandoned the claim. *See* Pl.'s Mem. at 2, n.1 ("Without conceding that his First Amendment claim lacks merit, Plaintiff has decided not to press forward with that claim.").  Therefore, the Court GRANTS Defendants' Motion with respect to the First Amendment claim.

## V. Plaintiff's State Law Claims

### A. False Arrest Claims Against the NYPD Officers

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law."  *Weyant*, 101 F.3d at 852; *see also Ackerson*, 702 F.3d 15, 19 (stating that § 1983 and New York law on false arrest claims are "substantially the same").  Additionally, a similar doctrine to the federal qualified immunity doctrine exists under New York common-law.  *Jenkins v. City of N.Y.*, 478 F.3d 76, 86–87 (2d Cir. 2007) ("If the detective defendants were entitled to qualified immunity under federal law, summary judgment would be similarly appropriate on [the] state law false arrest claim.").

Therefore, based on the probable cause and qualified immunity analyses outlined above, Defendants' Motion is also GRANTED with respect to the state law false arrest claims[12] against the Officer Defendants.

### B. Remainder of Plaintiff's State Law Claims

Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise jurisdiction over any non-federal claims over which it could have supplemental jurisdiction if the Court has dismissed all of the claims over which it has original jurisdiction.  Subject matter jurisdiction in the instant action is based on federal question, 28 U.S.C. § 1331, and the jurisdictional counterpart to § 1983, 28 U.S.C. § 1343.  Having disposed of all of Plaintiff's federal claims, it would be inappropriate to adjudicate the remaining state law claims.  Therefore, the Court declines to retain jurisdiction over the remaining state law claims and dismisses them without prejudice.  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (stating that, if the federal claims are disposed of before trial, "the state claims should be dismissed as well.").

---

[12] Plaintiff's Amended Complaint denominates his state law claim as one for "false imprisonment," *see* Amend. Compl. ¶¶ 72-24, which is the same as false arrest under New York law.  *See, e.g., McKay v. City of New York*, 32 F. Supp. 3d 499, 505 (S.D.N.Y. 2014) ("In New York, false arrest and false imprisonment 'are two names for the same tort.'") (quoting *Holland v. City of Poughkeepsie*, 90 A.D.3d 841, 935 N.Y.S.2d 583, 589 (2d Dep't 2011)).

## VI. Conclusion

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment on all of the federal claims against them and the state law claim for false arrest against the Defendant Officers. This Court declines to retain supplemental jurisdiction over the remainder of the state law claims against Defendants and therefore DISMISSES those claims without prejudice. The Clerk of the Court is respectfully directed to terminate this motion, Doc. 55, and enter judgment in favor of Defendants.

The Clerk of the Court is respectfully directed to close this case.

It is SO ORDERED.

Dated:   February 10, 2017
         New York, New York

_____
Edgardo Ramos, U.S.D.J.